DAVID J. VAN HAVERMAAT, Cal Bar. No. 175761
Email: vanhavermaatd@sec.gov
MORGAN B. WARD DORAN, Cal. Bar No. 246107
Email: warddoranm@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Andrew G. Petillon, Associate Regional Director
John M. McCoy III, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

FILED

10 MAR -9 AM 10: 43

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

FRANCOIS E. DURMAZ (*aka* MAHMUT E. DURMAZ), ROBERT C. PRIBILSKI, USA RETIREMENT MANAGEMENT SERVICES (*aka* USA FINANCIAL MANAGEMENT SERVICES, INC.),

Defendants,

and

SIBEL INCE, MEHMET KARAKUS, MARLALI GAYRIMENKUL YATIRIMLARI, MARLALI PROPERTY INVESTMENT COMPANY, LLC, GULEN ENTERPRISES, INC.,

Relief Defendants.

Case No. CV10-01689-GW (JTWx)

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa. Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in or in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

2. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of business constituting violations of the federal securities laws occurred within this district and some Defendants reside in this district.

## SUMMARY

3. This matter involves an ongoing Ponzi scheme operated by Francois E. Durmaz ("Durmaz"), Robert C. Pribilski ("Pribilski"), and USA Retirement Management Services ("USARMS"). Defendants lure prospective investors by promoting estate planning seminars to retirees and near-retirees. At these seminars, Defendants provide general estate planning information and invite interested attendees to contact USARMS for a consultation. In addition to providing estate planning services to attendees who respond, however, Defendants Durmaz and Pribilski also offer clients the opportunity to invest in USARMS promissory notes that they represent pay guaranteed returns of between 8% and 11% annually. Defendants represent to clients that these returns are generated through investments in Turkish Eurobonds. Between 2005 and 2010, over 120 investors have purchased approximately $20 million of USARMS' promissory notes.

4. Contrary to their representations to investors, Defendants are operating a Ponzi scheme. In the five years that it has offered and sold promissory notes to investors, USARMS has generated no income from Turkish Eurobonds. Rather, Defendants make purported interest and principal payments to investors using new investors' funds. In addition to transferring investor funds to Pribilski and Durmaz-controlled Relief Defendant Marlali Property Investment Company, LLC ("Marlali Property"), Defendants have transferred approximately $7.2 million to Relief Defendants Sibel Ince ("Ince"), Mehmet Karakus ("Karakus"), Marlali Gayrimenkul Yatirimlari ("Yatirimlari"), and Gulen Enterprises, Inc. ("Gulen").

5. As of December 31, 2009, of the $20 million of USARMS promissory notes purchased by investors, only approximately $900,000 remains in financial accounts controlled by Defendants.

6. Defendants, by engaging in the conduct described in this Complaint, have violated, and unless enjoined will continue to violate, the antifraud provisions of the federal securities laws. By this Complaint, the Commission seeks emergency relief against Defendants, including a temporary restraining order, an asset freeze, an order appointing a receiver over USARMS and all entities controlled by Durmaz or Pribilski, an order prohibiting the destruction of documents, an order granting expedited discovery, accountings, an order repatriating funds, and an order requiring Durmaz and Pribilski to surrender their passports temporarily and prohibiting them from traveling outside the United States, as well as preliminary and permanent injunctions, disgorgement with prejudgment interest, and civil penalties.

## DEFENDANTS

7. **Francois E. Durmaz (*aka* Mahmut E. Durmaz)**, age 39, resides in Los Angeles, California, and Streamwood, Illinois. Durmaz is USARMS' Secretary, but he also holds himself out as USARMS' Managing Partner and Director of its Senior Benefits Group. Durmaz is not registered with the

3

Commission in any capacity. In 2002, Durmaz took the Series 3 and 63 license exams, but he withdrew his results prior to scoring and he has never held those licenses. Durmaz has not been associated with a registered entity since July 2002, when he was terminated from New York Life Securities Inc. for failing to timely repay a debit against his commission ledger and for his apparent delinquency in paying two third-party suppliers for services rendered. On March 8, 1998, Durmaz pled guilty to a reduced charge of disorderly conduct and received a one year conditional discharge after having been charged for passing bad checks to business creditors. On November 9, 2009, Durmaz consented to a $250 fine by the State of Illinois for violating Section 12.D of the Illinois Securities Law by not responding to a letter requesting information about his sale of securities.

8. **Robert C. Pribilski**, age 51, resides in Lisle, Illinois. Pribilski is USARMS' President, but he also holds himself out as USARMS' Vice President and Managing Partner. Pribilski is also a Manager of the related entity Marlali Property. In January 2007, Pribilski sold a residential property located in Naperville, Illinois to Marlali Property. Pribilski is not registered with the Commission in any capacity and does not hold any securities licenses.

9. **USA Retirement Management Services (*aka* USA Financial Management Services, Inc.)**, has been incorporated in Illinois since July 30, 2003, and has offices in Los Angeles, California, Irvine, California, and Oakbrook Terrace, Illinois. USARMS purports on its website to provide "Estate and Financial planning," but also sells promissory notes to investors. USARMS and its securities are not registered with the Commission. Pribilski is the signatory on USARMS' bank accounts.

### RELIEF DEFENDANTS

10. **Sibel Ince**, age 37, resides in Laguna Beach, California. Ince is not registered with the Commission in any capacity. Ince is listed as Durmaz' spouse on property records and is the co-owner with Durmaz of an Illinois property. Ince

4

received approximately $340,000 from USARMS and Durmaz and Pribilski-controlled Marlali Property.

11. **Marlali Gayrimenkul Yatirimlari**, age unknown, resides in Istanbul, Turkey. Yatirimlari is not registered with the Commission in any capacity. Yatirimlari received wire transfers of approximately $6 million from USARMS and Marlali Property.

12. **Mehmet Karakus**, age unknown, resides in Istanbul, Turkey. Karakus is not registered with the Commission in any capacity. Karakus received wire transfers of approximately $925,000 from Durmaz and Pribilski-controlled Marlali Property.

13. **Marlali Property Investment Company, LLC**, is based in Los Angeles, California (based on information and belief, as "Marlali Property and Investment Company, LLC"), and Oakbrook, Illinois. Marlali Property has been a registered California limited liability company since January 11, 2007, and a registered Illinois limited liability company since February 2, 2006. Pribilski is a Member of Marlali Property. Both Pribilski and Durmaz are signatories on Marlali Property's bank accounts. Marlali Property received at least $12.3 million from USARMS.

14. **Gulen Enterprises, Inc.**, is located in Los Angeles, California, and has been a California corporation since May 31, 2009, but its registration is currently suspended. Mahmut Gulen is the service agent for Gulen. Gulen received $970,000 from Durmaz and Pribilski-controlled Marlali Property.

## THE FRAUDULENT SCHEME

A.   **The Solicitation Of Investors**

15. In approximately January 2005, Defendants began using their estate planning business to lure prospective investors and sell them promissory notes issued by USARMS.

16. USARMS mass-mailed to potential investors postcards that advertised

5

numerous estate planning seminars at local restaurants and country clubs. For example, in 2008 and 2009, at least three USARMS promissory note investors with Illinois addresses received USARMS estate planning advertisement postcards via United States mail. The USARMS postcards did not mention investments advice or investments. USARMS spent over $1.2 million on postage and over $1.1 million on country clubs, banquet halls, and other promotional materials for their estate planning seminars.

17. Between 2005 and the present, USARMS has held estate planning seminars in Illinois and California. For example, in 2008 and 2009, at least three eventual USARMS promissory note investors attended USARMS' estate planning seminars in Illinois and California. At these seminars, Durmaz and other USARMS employees provide attendees a general presentation on estate planning and invite attendees to contact USARMS to receive a personal consultation. Defendants do not mention investments advice or investments.

18. Between 2005 and the present, Defendant Durmaz sent seminar attendees who requested an estate planning consultation letters confirming their appointment "to explain the amazing steps you must take when you set up a Living Trust and Will." These letters do not mention investment advice or investments, but state that Durmaz "graduated from Baruch College of New York University with a Master of Business Administration in Finance" and was "a Certified Senior Advisor."

19. Between 2005 and the present, Defendants Durmaz and Pribilski provided estate planning services to seminar attendees who requested a consultation with USARMS. For example, in 2008 and 2009, at least three eventual USARMS promissory note investors met with Durmaz and Pribilski at USARMS' Oakbrook, Illinois office. At these meetings, investors provided information about their finances so that Defendants Durmaz and Pribilski could provide them with estate planning services and advice. In addition to providing

estate planning services, however, Defendants Durmaz and Pribilski also offered and sold USARMS promissory notes to their estate planning clients. Defendants have raised at least approximately $20 million from the offer and sale of USARMS' promissory notes.

**B.** **Defendants Misrepresent To Investors Their Uses Of Investor Funds, The Safety Of Investments With USARMS, And Durmaz' Finance Credentials**

20. After examining their estate planning clients' financial information, Defendants Durmaz and Pribilski pitch what they describe as safe, guaranteed investments in "Turkish Eurobonds." Defendants Durmaz and Pribilski tell prospective investors that USARMS can sell them promissory notes that pay rates of return of between 8% and 11% from investments in Turkish Eurobonds. Durmaz states that USARMS has issued hundreds of millions of dollars in promissory notes. The USARMS-issued promissory notes have three and five year terms, with interest payable either monthly or at the end of the term. Investors' principal is not to be repaid until the promissory notes mature. Because many of the early USARMS promissory notes were issued for five year terms, most investors' principal has not yet come due.

21. Defendants Durmaz and Pribilski give the impression to investors that they are knowledgeable regarding investments in general and foreign investments in particular. Durmaz, for example, burnishes his purported finance credentials by claiming that he had earned a Masters of Business Administration ("MBA") and was a Certified Senior Advisor ("CSA"). Investors believed that these credentials demonstrated Durmaz' finance pedigree and confirmed that he was educated and experienced in investments specifically tailored to the needs of seniors and retirees.

22. In reality, Mr. Durmaz does not hold an MBA from either Baruch College of the City University of New York or New York University, and he is not a CSA. Indeed, the Society of Certified Senior Advisors sent him a request to

7

cease and desist from using their trademark on April 17, 2007.

23. Defendants Durmaz and Pribilski specifically suggest that their estate planning clients invest their retirement funds in the USARMS promissory notes. To facilitate the transfer of Individual Retirement Accounts ("IRAs") and other retirement accounts, USARMS uses a third-party administrator that specializes in self-directed IRAs to handle investors' funds. USARMS instructs its promissory note investors to open accounts with the administrator. The administrator receives funds from investors on behalf of USARMS and follows investors' directions to transfer invested funds to USARMS' bank account. At USARMS' direction, the administrator also provides monthly statements to investors and handles all buy and sell requests for the promissory notes.

24. According to the administrator, as of February 23, 2010, over 120 investors invested approximately $20 million in USARMS promissory notes between 2005 and 2010. As recently as February 23, 2010, two investors purchased over $150,000 of USARMS' promissory notes.

25. Between 2005 and the present, Defendants issued documents titled "Promissory Note[s]" to investors. The promissory notes issued by Defendants describe a "loan agreement and promissory note" between USARMS and its IRA administrator, for the benefit of each investor. The USARMS promissory notes state the duration of the loan, the amount of the monthly and cumulative interest payments to be made by USARMS to investors, and the total repayment amount. For example, one investor in USARMS promissory notes invested approximately $474,683 in a five year note with a 9.4% interest rate that is due in 2013. Another investor invested approximately $258,884 in a five year note with an 8.35% interest rate that is due in 2014. Durmaz signs the USARMS promissory notes as "Managing Partner" of USARMS, and he again falsely uses the titles MBA and CSA.

26. Contrary to their representations to investors, Defendants are not

investing in Turkish Eurobonds. Rather, the payments that investors receive from USARMS are actually either a return of their own investment or funds received from new investors. USARMS' bank accounts show no monies coming in either from Turkey or any other entity (*i.e.*, a brokerage, a wire transfer service, or a foreign bank account) that could provide payments from earnings on Turkish Eurobonds.

27. On July 16, 2009, Durmaz submitted a sworn affidavit to the Illinois authorities falsely stating that "[a]t no time have I sold any type of securities to any individuals, including promissory notes."

### C. **Defendants Are Misappropriating Investor Funds**

28. In addition to the USARMS promissory note Ponzi scheme, Defendants Durmaz and Pribilski control and direct Marlali Property, a real estate venture that purchases, rents, and operates properties and restaurants in Illinois and California.

29. From at least February 2006 through at least December 2009, Defendants Durmaz and Pribilski have raised an additional approximately $14 million from investors. Unlike the previously referenced $20 million that Defendants raised for investments in USARMS' promissory notes, these investor monies did not flow through USARMS' IRA administrator. The additional $14 million appears to consist of funds invested by investors in USARMS' promissory notes, Marlali Property, and, to a lesser extent, other investments offered and sold by Defendants.

30. Defendant Pribilski has signatory authority over USARMS' financial accounts, and Defendants Durmaz and Pribilski have signatory authority over Marlali Property's financial accounts.

31. From at least January 2005 through at least December 2009, Defendants disbursed over $27 million of investors' funds from USARMS' primary bank account: (1) to repay interest on USARMS' promissory note

9

investors; (2) to fund Marlali Property's business; (3) for personal use; (4) to pay USARMS' promotional expenses; and (5) to transfer funds to relatives and/or Turkish nationals, including Relief Defendants Ince and Yatirimlari. The table below shows the amount of investor funds that Defendants disbursed by category:

| Category | Amount |
| --- | --- |
| Investors | $7,721,926 |
| Marlali Property's Business | $12,322,864 |
| Personal Use | $4,974,929 |
| Payroll, Taxes, Other | $2,798,548 |
| Promotional Expenses | $2,343,250 |
| Transfers to Relatives/Turkey | $1,233,628 |
| **Total** | **$31,395,145** |

32. From at least January 2005 through at least December 2009, Durmaz and Pribilski used USARMS' investors' funds to purchase, among other things, luxury and other automobiles (over $450,000), Durmaz' and Pribilski's personal housing ($138,000), Durmaz' stamp collection ($3,750), vacations, access to web-based pornography, and the cryogenic preservation of umbilical cord stem cells.

33. In addition, from at least January 2005 through at least December 2009, Defendants funded a Marlali Property bank account almost exclusively with funds transferred from USARMS' accounts; Marlali Property received a net of at least $12.3 million from USARMS. *Id.* During the same period, Defendants transferred approximately $7.2 million out of the Marlali Property accounts to Relief Defendants Karakus, Yatirimlari, and Gulen. Defendants also transferred approximately $340,000 from USARMS' accounts to Relief Defendant Ince.

34. As of December 31, 2009, of the $20 million of USARMS promissory

notes purchased by investors, only approximately $900,000 remains in financial accounts controlled by Defendants.

## FIRST CLAIM FOR RELIEF

### Unregistered Offer and Sale of Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

### (Against All Defendants)

35. The Commission realleges and incorporates by reference paragraphs 1 through 34 above.

36. Defendants, by engaging in the conduct described above, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

37. No registration statement has been filed with the Commission or has been in effect with respect to any of the offerings or sales alleged herein.

38. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and (c).

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a) of the Securities Act

### (Against All Defendants)

39. The Commission realleges and incorporates by reference paragraphs 1 through 34 above.

40. Defendants, and each of them, by engaging in the conduct described above, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly:

  a. with scienter, employed devices, schemes, or artifices to defraud;

  b. obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

  c. engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

41. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## THIRD CLAIM FOR RELIEF
## Fraud in Connection with the Purchase or Sale of Securities
## Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
## (Against All Defendants)

42. The Commission realleges and incorporates by reference paragraphs 1 through 34 above.

43. Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

  a. employed devices, schemes, or artifices to defraud;

  b. made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

  c. engaged in acts, practices, or courses of business which

operated or would operate as a fraud or deceit upon other persons.

44. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## FOURTH CLAIM
### Violations of the Broker-Dealer Registration Provisions
### Violations of Section 15(a) of the Exchange Act
### (Against Defendants Durmaz and Pribilski)

45. The Commission realleges and incorporates by reference paragraphs 1 through 34 above.

46. Defendants Durmaz and Pribilski, by engaging in the conduct described above, directly or indirectly, made use of the mails or means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of securities, without being registered as a broker or dealer in accordance with Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), 15 U.S.C. § 78o(a).

47. By engaging in the conduct described above, defendants Durmaz and Pribilski violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## FIFTH CLAIM
### Relief Defendants Received Ill-Gotten Gains
### (Against All Relief Defendants)

48. The Commission realleges and incorporates by reference paragraphs 1 through 34 above.

48. In the manner described above, each relief defendant received ill-gotten gains for which they received no consideration and to which they have no

13

legitimate claim.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

**I.**

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

**II.**

Issue judgments, in forms consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily, and permanently enjoining Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a), 5(c), and 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and Durmaz and Pribilski from violating Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

**III.**

Issue, in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction freezing the assets of each of the Defendants and Relief Defendants and any entity affiliated with any of them, appointing a receiver over USARMS and all entities controlled by Durmaz and Pribilski, prohibiting each of the Defendants and Relief Defendants from destroying documents, granting expedited discovery, repatriating funds, requiring Defendants Durmaz and Pribilski to surrender their passports temporarily and prohibiting them from traveling outside the United States, and requiring accountings from each of the Defendants and Relief Defendants.

**IV.**

Order each of the Defendants and Relief Defendants to disgorge all ill-gotten

gains from Defendants' illegal conduct, together with prejudgment interest thereon.

## V.

Order each of the Defendants to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VII.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: March 8, 2010                    Respectfully submitted,

David J. Van Havermaat
Morgan B. Ward Doran
Attorneys for Plaintiff
Securities and Exchange Commission