Byron Z. Moldo (SBN 109652)
  bmoldo@ecjlaw.com
ERVIN COHEN & JESSUP LLP
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Tel: (310) 273-6333
Fax: (310) 859-2325

Attorneys for Stephen J. Donell, Permanent Receiver

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,

      v.

FRANCOIS E. DURMAZ (aka
MAHMUT E. DURMAZ), ROBERT C.
PRIBILSKI, USA RETIREMENT
MANAGEMENT SERVICES (aka USA
FINANCIAL MANAGEMENT
SERVICES, INC.),

          Defendants.

      And

SIBEL INCE, MEHMET KARAKUS,
MARLALI GAYRIMENKUL
YATIRIMLARI, MARLALI
PROPERTY INVESTMENT
COMPANY, LLC, GULEN
ENTERPRISES, INC.,

          Relief Defendants.

CASE NO. CV 10-1689-JLS-AJW

**NOTICE OF MOTION AND
MOTION OF STEPHEN J. DONELL,
PERMANENT RECEIVER, TO
APPROVE: RECEIVER'S FINAL
ACCOUNT AND REPORT AND
COMPENSATION; REQUEST FOR
COMPENSATION OF THE
RECEIVER'S COUNSEL AND
ACCOUNTANT; DISCHARGE OF
THE RECEIVER; ABANDONMENT
OR DESTRUCTION OF BOOKS
AND RECORDS; DISBURSEMENT
OF REMAINING FUNDS; AND
EXONERATION OF THE BOND;
DECLARATION OF STEPHEN J.
DONELL IN SUPPORT THEREOF**

DATE:     February 9, 2018
TIME:     2:30 P.M.
CTRM:   10A

Hon. Josephine L. Staton

[Pursuant to Local Rule 66-7]

*[Special Notice of Motion to All Known
Potential Claimants Filed Concurrently
Herewith]*

ERVIN COHEN & JESSUP LLP

**TO THE HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE, ALL PARTIES HEREIN, AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 9, 2018 at 2:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 10A of the above-entitled Court located at 411 West Fourth Street, Santa Ana, California, 92701, Stephen J. Donell, Permanent Receiver ("Receiver") for defendant USA Retirement Management Services (aka USA Financial Management Services, Inc.) ("USA") and all entities controlled by defendants Francois E. Durmaz ("Durmaz") and Robert C. Pribilski ("Pribilski"), including Marlali Property Investment Company, LLC ("Marlali"), and their subsidiaries and affiliates (collectively "Receivership Entities"), will and hereby does move the Court for an order:

1.  Approving, settling and allowing the Receiver's Final Account and Report herein.

2.  Terminating the Receivership and discharging the Receiver from all further duties, liabilities and responsibilities.

3.  Allowing, settling and approving the Receiver's total fees in the sum of $389,615.21 and costs in the sum of $18,752.10 through the termination of the Receivership.

4.  Allowing, settling and approving the total fees and costs of the Receiver's counsel, Ervin Cohen & Jessup LLP ("ECJ"), through the termination of the Receivership herein in the sum of $147,687.52.

5.  Allowing, settling and approving the total fees and costs of the Receiver's special counsel (retention approved pursuant to Court order under seal), through the termination of the Receivership herein in the sum of $14,665.00.

6.  Allowing, settling and approving the total fees and costs of the Receiver's accountants, Crowe Horwath LLP ("Crowe"), through the termination of the Receivership herein in the amount of $161,843.20.

7.      Authorizing the Receiver to distribute the remaining funds in the Receivership Estate, to the Receiver, ECJ, special counsel, and Crowe, *pro rata,* in partial satisfaction of their approved administrative fee claims.

8.      In the event that funds become available, and the Receiver and his retained professionals have been paid in full, authorizing the Receiver to distribute any funds to priority claimants 2121 Avenue of the Stars, LLC, and former employees of the Receivership Entities.

9.      In the event that any payments by the Receiver to Court-approved professionals or claimants are not negotiated within ninety (90) days, authorizing the Receiver to distribute the funds that were not negotiated to the remaining claimants on a pro rata basis;

10.      Ratifying, confirming and approving all of the Receiver's acts, transactions and all of his actions, including the actions of his attorneys, accountants, employees and agents, as Receiver herein for the duration of the Receivership as being right and proper and in the best interests of the Receivership Estate and the parties to this action.

11.      Ratifying, confirming and approving all distributions for compensation and costs to the Receiver made during the Receivership.

12.      Ratifying, confirming and approving all distributions for compensation and costs to ECJ made during the Receivership.

13.      Ratifying, confirming and approving all distributions for compensation and costs to the Receiver's special counsel made during the Receivership.

14.      Ratifying, confirming and approving all distributions for compensation and costs to Crowe made during the Receivership.

15.      Releasing the Receiver and the Receivership Estate from all liability for any and all claims, demands or causes of action that may have directly or indirectly arisen from the Receivership Estate prior to, during or after the Receivership period, that were not brought before this Court before the time of hearing on the Final

1    Account and Report.

2        16.    Authorizing the Receiver to abandon or destroy all books and records

3    of the Receivership Estate under his control.

4        17.    Exonerating and thereby releasing from any liability whatsoever any

5    bond heretofore filed by the Receiver and exonerating the sureties thereon.

6        The Receiver's Motion is brought pursuant to Local Rule 66-7 and is based

7    on this Notice of Motion; the Notice of Motion to Claimants, filed concurrently

8    herewith and attached hereto as **Exhibit "A"**; the supporting declaration of Stephen

9    J. Donell; the Receiver's Final Accounting; the records on file in this action; and

10   such other oral and documentary evidence as may be presented at or before the time

11   of hearing.

12

13   DATED:  December 22, 2017          ERVIN COHEN & JESSUP LLP

14

15

16                                     By:  _/s/ BYRON Z. MOLDO_____
                                            BYRON Z. MOLDO

17                                          Attorneys for Stephen J. Donell,
                                            Permanent Receiver

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

On March 9, 2010 this Court appointed Stephen J. Donell ("Receiver"), as Temporary Receiver for defendant USA Retirement Management Services (aka USA Financial Management Services, Inc.) ("USA") and all entities controlled by defendants  Francois E. Durmaz ("Durmaz") and Robert C. Pribilski ("Pribilski"), including Marlali Property Investment Company, LLC ("Marlali"), and their subsidiaries and affiliates (collectively "Receivership Entities"). [Docket Entry 10] On March 24, 2010 this Court entered its order ("Appointing Order") which confirmed the Receiver's appointment as Permanent Receiver. [Docket Entry 25] A true and complete copy of the Appointing Order is attached hereto as **Exhibit "B"**

The Receiver was appointed upon the motion of the Securities and Exchange Commission ("SEC"), which filed a complaint against the defendants alleging various violations of the Securities Act of 1933 and Securities and Exchange Act of 1934.  The defendants were accused of luring prospective individuals into a scheme to defraud individuals through various estate planning investment vehicles.  The defendants were in fact operating a scheme that misappropriated approximately $22 million through the Receivership Entities.  Funds were transferred by and between the Receivership Entities, owned and controlled entities, and the individuals defendants domestically and internationally.  Therefore, the Receiver was tasked with liquidating the remaining assets of the Receivership Entities and attempting to recover funds for the benefit of the defrauded individuals.

The Appointing Order provided, among other things, that the Receiver had the full powers of an equity receiver for the Receivership Entities and for all funds, assets, premises, collateral, and other assets belonging to or in the possession or control of the Receivership Entities or any of them.  [Docket Entry 25, Pg. 7, Sec VIII]  Pursuant to the Appointing Order, this Court directed the Receiver to make

ERVIN COHEN & JESSUP LLP

1   such payments and disbursements from the funds and assets taken into custody,

2   control and possession or thereafter received by him, and to incur, or authorize the

3   making of such agreements as may be necessary and advisable in discharging his

4   duties as Permanent Receiver.  [Docket Entry 25, Pg. 9, Sec VIII(F)].  As the

5   Receiver believes that he has concluded his duties, he prepared a final account

6   summary, attached hereto as **Exhibit "C"**

7         During the course of the Receivership, the Receiver engaged various

8   professionals, including the law firm of Ervin Cohen & Jessup LLP ("ECJ") as

9   general counsel; special counsel (retention approved pursuant to Court order under

10  seal); and the accounting firm of Crowe Horwath LLP ("Crowe") as forensic and tax

11  accountant.  The Receiver investigated the defendants and Receivership Entities by

12  engaging in detailed document review and forensic accounting.  A claims procedure

13  proposed by the Receiver was established by the Court to allow potential claimants

14  to make claims against the funds in the Receivership Estate.  Once the Receiver

15  established an inventory of the assets of the Receivership Estate, he began

16  liquidating assets and recovering funds for distribution to investors.  Throughout the

17  course of the Receivership, the Receiver worked closely with the SEC and regularly

18  provided status updates to this Court.  Furthermore, the Receiver periodically sought

19  further instructions and approval from this Court when necessary in the

20  administration of the Receivership Estate.

21        On April 4, 2012, this Court entered a final judgment in this case against all

22  Defendants and the case closed.  [Docket Entry 105]  Now that the Receiver has

23  obtained federal and state tax clearance, the Receiver believes he has completed all

24  of his duties assigned under the Appointing Order and the Receivership should

25  therefore be terminated, and the Receiver discharged.

26

27

28

ERVIN COHEN & JESSUP LLP

## II.

## INVESTIGATION AND INVENTORY

The Receiver initially obtained documents and information regarding the defendants and Receivership Entities from the SEC.  Due to the large amount of misappropriated funds and sophistication of the scheme operated by the defendants, it was immediately apparent that the Receiver would require the services of additional professionals in order to complete his investigation and administration of the Receivership Estate.  Among the professionals retained, the Receiver employed counsel, an accounting firm, and a document recovery and imaging company in order to analyze the books and records of the Defendants and Receivership Entities acquired during the investigation.

The Receivership Entities maintained offices in Oakbrook Terrace, Illinois; Los Angeles, California; and Irvine, California.  The Receiver personally visited each office and informed the employees at each office that he was assuming control of the entity, assets, and premises pursuant to the Appointing Order.  Employees at the offices were interviewed by the Receiver and served with a copy of the Appointing Order.  Some of the employees further assisted the Receiver by providing information about the Receivership Entities, including relinquishing books and records to the Receiver.  In addition to the physical books and records, the Receiver also seized all of the computer hard drives of the Receivership Entities for forensic analysis.

Once the Receiver recovered the books and records of the Receivership Entities, Crowe performed a detailed forensic accounting in order to allocate the assets and funds of the Receivership Entities and establish the relationship between the Receivership Entities, the defendants, financial institutions and third parties.  Ultimately, the Receiver determined that substantial funds were transferred through various individuals and entities, including some located in the country of Turkey.  The Receiver also identified additional third parties who possessed documents and

ERVIN COHEN & JESSUP LLP

1  records of relevance to the Receiver.  Upon identifying these third parties, the

2  Receiver focused his investigation on those third parties to determine their

3  implication, if any, in the Defendants' scheme.  The Receiver also analyzed the

4  books and records to comprise a list of potential claimants of the Receivership

5  Estate as defined by Local Rule 66-5.

6      Following his initial investigation, on March 22, 2010, the Receiver filed his

7  first interim report with this court that detailed such efforts.  A true and complete

8  copy of the Receiver's First Interim Report is attached hereto as **Exhibit "D"**

9  [Docket Entry 22].  The Receiver was also ordered to file a status report with the

10  Court by July 6, 2010.  [Docket Entry 24]  On June 28, 2010, the Receiver filed his

11  status report with the Court, attached hereto as **Exhibit "E"**.

12      As the Receiver uncovered assets and funds, he compiled a detailed inventory

13  of the same.  Once a substantially complete inventory was compiled, the Receiver

14  proceeded to evaluate the available actions required to liquidate the assets and

15  recover funds for the benefit of the Receivership Estate.  The Receiver obtained

16  Court-approved authority on numerous occasions for the purposes of liquidation and

17  distribution of the assets and funds.

18

19  **III.**

20  **RETENTION OF PROFESSIONALS**

21      Due to the complexity of the misappropriation scheme and the transfer of

22  funds across international borders, the Receiver was required to retain various

23  professionals to assist him in discharging his duties.  As the Receiver's investigation

24  uncovered the breadth of legal issues; investment vehicles; and funds involved in

25  this case, he retained professionals as necessary.  In each instance where

26  professionals were retained, the Receiver applied to the Court for confirmation of

27  said retentions.  In all such applications, this Court approved the Receiver's

28  retention of an accounting firm, general counsel and special counsel.

Due to the advanced legal issues involved in this case, it was clear from the time of his appointment that the Receiver would require general legal counsel to represent him and the interests of the Receivership Estate in this matter. The multi-jurisdictional nature of the Defendants' scheme would require legal counsel with experience in such types of receivership matters. Moreover, the Defendants in this action had retained counsel and maintained a position adverse to the Receiver. Such noncooperation from the Defendants resulted in further litigation requiring the Receiver to retain his own counsel. The Receiver retained ECJ as his general counsel to represent him in this action and any collateral actions that arose during the course of the Receivership. ECJ incurred a total sum of $147,687.52 in fees and costs during the course of the Receivership, as reflected in the Receiver's Final Accounting, which includes estimate fees to finalize and file this report. (Ex. C)

The Receiver's initial inspection of the books and records of the Receivership Entities indicated that a complex accounting was required in order to allocate funds of the Receivership Estate. Such an undertaking warranted the retention of an accounting firm with experience in large-scale fraud schemes as occurred in this case. The Receiver retained the national accounting firm of Crowe to carry out efforts to locate misappropriated funds and assets. Once Crowe located funds and assets, the Receiver could begin to repatriate funds into the Receivership Estate. Crowe also assumed the duty of maintaining the books and records to administer the Receivership Estate and advised the Receiver in any tax matters that arose. During the course of the Receivership, Crowe incurred a total sum of $161,843.20 in fees and costs, as reflected in the Receiver's Final Accounting. (Ex. C)

On April 15, 2010, the Receiver filed a motion to ratify the Receiver's employment of attorneys and accountants. [Docket Entry 26] On May 6, 2010, this Court confirmed and ratified the Receiver's retention of ECJ and Crowe to serve as his general counsel and accounting firm, respectively. [Docket Entry 33]

1   During the Receiver's investigation, certain confidential issues arose, which

2   required the Receiver to retain special counsel.  The nature of the matters warranted

3   the filing of several sealed documents with this Court.  On April 7, 2011, the

4   Receiver filed an *ex parte* application to seal certain documents filed with this

5   Court. [Docket Entry 74]  On the same day this Court approved the Receiver's *ex*

6   *parte* application and ordered certain documents to remain under seal.  [Docket

7   Entry. 76]  Without disclosing any details therein beyond the publically available

8   docket, the Receiver applied for an order authorizing the employment of special

9   counsel on April 7, 2011. [Docket Entry 77]  On the same day, this Court approved

10  the Receiver's retention of said special counsel.  [Docket Entry 78]  Special counsel

11  incurred a total sum of $14,665.00 in fees and costs during the course of the

12  Receivership, as reflected in the Receiver's Final Accounting.  (Ex. C)

13

14  ## IV.

15  ## LIQUIDATION OF ASSETS AND CLAIMS PROCEDURE

16  Based on his inventory, the Receiver identified assets subject to liquidation

17  and located funds at various financial institutions.  Pursuant to the Appointing

18  Order, the Receiver was able to freeze numerous bank accounts that contained funds

19  of the Receivership Entities.  Additionally, the Receiver was able to obtain refunds

20  from many legitimate entities that transacted business with the Defendants and

21  Receivership Entities.  Upon identifying assets subject to liquidation, the Receiver

22  proceeded to seek the permission of this Court to take further action which was

23  granted by this Court.

24  On April 15, 2010, the Receiver filed a motion to (1) Discontinue Business

25  Operation; (2) Vacate Premises In Century City, and Irvine, California and

26  Oakbrook Terrace, Illinois and Reject Leases; (3) Employ Auctioneer to Sell

27  Personal Property; (4) Return Client Files; (5) Authorize Receiver to Sell Ford E150

28  Cargo Van; (6) Ratify Employment of Attorneys and Accountants; (7) Approve the

ERVIN COHEN & JESSUP LLP

1  Employment of A Property Manager; and (8) Approve Listing Agreement for Real

2  Property. [Docket Entry 26]. The Court entered an order granting the Receiver's

3  aforementioned motion on May 6, 2010 [Docket Entry 33]. Following entry of the

4  Court's Order, the Receiver began to wind up the Receivership Entities and

5  liquidate the personal and real property thereof.

6       As indicated above, on June 28, 2010, the Receiver filed his First Status

7  Report, which provided details regarding the Receiver's liquidation efforts. (Ex. E)

8  The Receiver discovered that a substantial amount of the misappropriated funds

9  were transferred into the country of Turkey prior to his appointment. The Receiver

10  retained special counsel in an attempt to investigate and recover the transferred

11  funds. Unfortunately, despite the Receiver's best efforts, the funds could not be

12  recovered from Turkey, and are believed to be unrecoverable by the Receiver.

13       In total, the Receiver recovered $940,712.48 from several sources. (Ex. C)

14  As the Receiver marshaled funds into the Receivership Estate, he established a

15  claims procedure for creditors and investors to make claims against the funds of the

16  Receivership Estate. On July 23, 2012, the Receiver filed a Motion to Establish a

17  Claims Procedure and Bar Date. [Docket Entry 40] On September 28, 2010, the

18  Court granted the Receiver's Motion to Establish a Claims Procedure and Bar Date.

19  [Docket Entry 49] A true and complete copy of the Order granting the Receiver's

20  Motion to Establish a Claims Procedure and Bar Date for Filing Claims is attached

21  hereto as **Exhibit "F"** Pursuant to the Court's order, the Receiver caused notice of

22  the claims procedure to be published in the Los Angeles Daily Journal and Chicago

23  Sun-Times for two consecutive weeks. Furthermore, the Receiver posted

24  information regarding the claims procedure on his website and made claim forms

25  available for download. The Court set a claims bar date ninety (90) days after the

26  entry of its order and established procedures for objecting to claims and resolving

27  claims disputes.

28

ERVIN COHEN & JESSUP LLP

13326.7:1673109.1

11

1   In accordance with the claims procedure, the Receiver compiled a database of

2   claimants and determined whether to accept or reject individual claims.  The

3   Receiver evaluated each claim based on its documentary support; information

4   obtained from the books and records seized at the Receivership Entities; and

5   information derived from the Receiver's own investigation.  Court intervention was

6   not required on any claims issues.

7

8   V.

9   **DISTRIBUTION OF FUNDS**

10   The majority of recovered funds have been consumed by the administration of

11   the Receivership Estate, including the numerous professionals required in order to

12   engage in said administration.  In addition to administrative expenses, there are also

13   several claims that are entitled to receive priority distribution over the claims of

14   defrauded individuals, as discussed in detail below.  Due to the fact that substantial

15   funds were transferred to Turkey and could not be recovered, there are no funds

16   remaining for distribution to creditors and claimants after payment of administrative

17   and priority claims.

18   As discussed above, the majority of recovered proceeds have been consumed

19   by the administrative fees and costs of the Receivership Estate.  The Receiver

20   incurred $389,615,21 in fees and $18,752.10 in costs.  ECJ, the Receiver's general

21   counsel incurred $147,687.52 in fees and costs; the Receiver's special counsel

22   incurred $14,665.00 fees and costs; and Crowe, the Receiver's accounting firm

23   incurred $161,843.20 in fees and costs.

24   The general rule regarding payment of receivership expenses is that the:

25   "[C]osts and expenses of a receivership, including compensation for the

26   receiver, counsel fees, and obligations incurred by him in the discharge of his duties,

27   constitute a first charge against the property or funds in the receivership. . ."

28

ERVIN COHEN & JESSUP LLP

66 Am.Jur.2d *Receivers* § 281 (1973). "The Order of payment of receivership costs and expenses may be stated as follows: -- First:  Payment of what is ordinarily called court costs and payment of receiver's fees and receiver's counsel fees—the above mentioned costs and fees are a first charge on the funds or property in the court's possession and control. . ."  Ralph Ewing Clark, *Clark on Receivers*, § 637 (3d ed. rev 1992).  The Receiver and his retained professionals should therefore receive the highest priority of distribution from the funds of the Receivership Estate. This aforementioned first priority of payment is also supported by applying the bankruptcy principles provided by Local Rule 66-8, as discussed below.

In this case, in addition to the Receiver and his retained professionals, there exist several claims entitled to priority including thirteen employee wage claims and an additional administrative claim as follows:

- An administrative claim by 2121 Avenue of the Stars, LLC ("2121 Avenue") in the amount of $29,243.46 is entitled to priority by stipulation and order of this Court entered on November 9, 2010. (Stipulation at [Docket Entry 55]; Order at [Docket Entry 58])  A true and complete copy of the Order Approving Stipulation Permitting 2121 Avenue of the Stars, LLC to Apply Security Deposits is attached hereto as **Exhibit "G"**

- Combined wage claims totaling $22,486.52 of thirteen former employees of the Receivership Entities are entitled to priority pursuant to Local Rule 66-8, as discussed below.

Since the claim and priority of 2121 Avenue has already been resolved by stipulation and order of this Court, no further legal analysis is warranted.  The Receiver believes the wage claims, on the other hand, are entitled to priority in distribution pursuant to Local Rule 66-8 and United States Bankruptcy Code ("Bankruptcy Code") 11 U.S.C. § 507(a)(4)(A).

ERVIN COHEN & JESSUP LLP

Local Rule 66-8 provides: "Except as otherwise ordered by the Court, a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy."  The wage claims should therefore receive treatment as if the Receivership Estate is analogous to a bankruptcy estate and the Receiver as the bankruptcy trustee, applying principles of bankruptcy law.  The Bankruptcy Code enumerates priorities in distribution at 11 U.S.C. § 507.  As applicable in this case, the first priority in distribution is to the administrative expenses of the Receiver [trustee] (11 U.S.C. § 507(a)(1)(C)), which includes the fees and costs of his retained professionals.  The Bankruptcy Code next provides second priority, as applicable in this case to "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual[.]"  11 U.S.C. § 507(a)(4)(A).

Thus, the fees and expenses of the Receiver and his professionals should receive first priority in distribution.  Following satisfaction of the fees and expenses of the Receiver and his professionals, and in the event that funds become available, the Receiver proposes to distribute the available funds on a *pro rata* basis to pay the priority claims of (i) 2121 Avenue; and (ii) wages.

As of December 18, 2017, a balance of $71,629.38 exists in the receivership estate.  The total amount owed to the Receiver, ECJ, special counsel, and Crowe, is $145,356.19 consisting of $137,909.44 in fees and $7,446.75 in expenses.  Therefore, at this time, there are insufficient funds to satisfy the fees and costs of the Receiver and his retained professionals.  The Receiver proposes to distribute the existing funds in his possession, as follows:

| PROFESSIONAL | FEES DUE | EXPENSES DUE | FEES TO BE PAID | EXPENSES TO BE PAID |
|---|---|---|---|---|
| Stephen J. Donell, Receiver | 70,810.49 | 1,366.29 | 32,954.98 | 1,366.29 |
| Ervin Cohen & Jessup LLP | 29,998.35 | 5,604.99 | 13,961.14 | 5,604.99 |
| Crowe Horwath LLP | 37,100.60 | 475.47 | 17,266.51 | 475.47 |

# VI.

## <u>AUTHORITY TO DISCHARGE RECEIVER</u>

A Receiver may be discharged upon his motion for approval of his final account and report after proper notice to all known claimants of the Receivership Estate.  Local Rule 66-7 provides:

> The receiver shall give notice by mail to all parties to the action and to all known creditors of the defendant of the time and place for hearing of:
> (a)  Petitions for the payment of dividends to creditors;
> (b)  Petitions for the confirmation of sales of real property and personal property;
> (c)  Report of the receiver;
> (d)  Applications for instructions concerning administration of the estate;
> (e)  Applications for discharge of the receiver; and
> (f)  Applications for fees and expenses of the receiver, the attorney for the receiver and any other person to aid the receiver.
> The provisions of L.R. 6-1 shall apply to such notice.

Local Rule 6-1 provides that if mailed, the notice of motion shall be served not later than thirty-one (31) days before the date of the motion.  In this case, the Receiver is providing his account and report, applying for discharge and payment of fees and expenses.  The Receiver, by and through counsel, mailed the notice of motion to all known claimants of the Receivership Estate on December 22, 2017 and the hearing is set for February 9, 2018, which is in compliance with Local Rule 6-1.  A true and complete copy of the Receiver's Notice of Motion to Claimants is attached hereto as **Exhibit "A"**  The Receiver has complied with the local rules in the presentation of this motion and the Court is authorized to grant the Receiver's requested relief.

ERVIN COHEN & JESSUP LLP

# VII.

# <u>CONCLUSION</u>

The Receiver should be discharged because he has fulfilled his duties under the Appointing Order and final judgment has been entered in this case.  For the aforementioned reasons, the Receiver requests that the Court approve the Receiver's final account and report and the additional relief requested herein.

DATED:  December 22, 2017          ERVIN COHEN & JESSUP LLP


By: /s/ BYRON Z. MOLDO
      BYRON Z. MOLDO
      Attorneys for Stephen J. Donell,
      Permanent Receiver

### DECLARATION OF STEPHEN J. DONELL

I, Stephen J. Donell, declare:

1.     On March 9, 2010, I was appointed as Temporary Receiver for defendant USA Retirement Management Services (aka USA Financial Management Services, Inc.) ("USA") and all entities controlled by defendants  Francois E. Durmaz ("Durmaz") and Robert C. Pribilski ("Pribilski"), including Marlali Property Investment Company, LLC ("Marlali"), and their subsidiaries and affiliates (collectively "Receivership Entities").

2.     On March 24, 2010 this Court entered its order ("Appointing Order") which confirmed my appointment as Permanent Receiver.

3.     I was appointed Receiver upon the motion of the Securities and Exchange Commission ("SEC"), which filed a complaint against the defendants alleging various violations of the Securities Act of 1933 and Securities and Exchange Act of 1934.  The defendants were accused of luring prospective individuals into a scheme to defraud individuals through various estate planning investment vehicles.  The defendants were, in fact, operating a scheme that misappropriated approximately $22 million through the Receivership Entities. Funds were transferred by and between the Receivership Entities, owned and controlled entities, and the individuals defendants domestically and internationally. As Receiver I was tasked with liquidating the remaining assets of the Receivership Entities and attempting to recover funds for the benefit of the defrauded individuals.

4.     The Appointing Order provided, among other things, that the Receiver had the full powers of an equity receiver for the Receivership Entities and for all funds, assets, premises, collateral, and other assets belonging to or in the possession or control of the Receivership Entities or any of them.  Pursuant to the Appointing Order, this Court directed me to make such payments and disbursements from the funds and assets taken into custody, control and possession or thereafter received by me, and to incur, or authorize the making of such agreements as may be necessary

1  and advisable in discharging my duties as Permanent Receiver.  As I believe that I
2  have concluded my duties, I prepared this final account and report.

3      5.    During the course of the Receivership, I engaged various professionals,
4  including the law firm of Ervin Cohen & Jessup LLP ("ECJ") as general counsel;
5  special counsel (retention approved pursuant to Court order under seal); the
6  accounting firm of Crowe Horwath LLP ("Crowe") as principal forensic and tax
7  accountant.

8      6.    I investigated the defendants and Receivership Entities by engaging in
9  detailed document review and forensic accounting.  This Court approved the
10  establishment of a claims procedure that I proposed to allow potential claimants to
11  make claims against the funds in the Receivership Estate.  Once I established an
12  inventory of the assets of the Receivership Estate, I began to liquidate assets and
13  attempt to recover funds for distribution to investors.  Throughout the course of the
14  Receivership, I worked closely with the SEC and regularly provided status updates
15  to this Court.  Furthermore, I have periodically sought further instructions and
16  approval from this Court when necessary during the administration of the
17  Receivership Estate.

18      7.    I previously commenced the process to terminate the Receivership
19  Estate by submitting final tax returns for the receivership estate.  I also requested a
20  prompt determination of tax liability pursuant to Internal Revenue Code ("IRC")
21  Section 6501(d) which provides, in part, that any proceeding for the collection of tax
22  shall be begun within eighteen (18) months after written request, which is less than
23  the standard three (3) year period.

24      8.    I have received letters from the Internal Revenue Service and
25  California Franchise Tax Board confirming that as Receiver I have no further
26  liability to either agency.  Therefore, I believe it is appropriate for the receivership
27  estate to be terminated, the Receiver discharged, and to distribute the remaining
28  funds in my possession.

9.    The majority of funds that I recovered have been consumed by the administration of the Receivership Estate, including the numerous professionals required in order to engage in said administration.  In addition to administrative expenses, I believe there are also several claims that are entitled to receive priority distribution over the claims of defrauded individuals.  Due to the fact that substantial funds were transferred to Turkey and could not be recovered, there are insufficient funds at this time to fully satisfy the outstanding amounts owed to me, ECJ, special counsel, and Crowe.

10.    I incurred $389,615.21 in fees and $18,752.10 in costs.  ECJ, my general counsel incurred $147,687.52 in fees and costs; my special counsel incurred $14,665.00 in fees and costs; and Crowe, my accounting firm incurred $161,843.20 in fees and costs.

11.    In addition to the amounts owed to me and my retained professionals, there exist several claims entitled to priority including thirteen employee wage claims and an additional administrative claim as follows:

- An administrative claim by 2121 Avenue of the Stars, LLC ("2121 Avenue") in the amount of $29,243.46 that was approved by this Court pursuant to its order entered on November 9, 2010.

- Combined wage claims totaling $22,486.52 of thirteen former employees of the Receivership Entities.

12.    I am proposing that the outstanding amounts owed to me and my professionals should receive first priority in distribution.  Following satisfaction of the fees and expenses of me and my professionals, and in the event that funds become available, I propose to distribute the available funds on a *pro rata* basis to pay the priority claims of (i) 2121 Avenue; and (ii) wages.

13.    As of December 18, 2017, a balance of $71,729.38 exists in the receivership estate.  The total amount owed to me, ECJ, special counsel, and Crowe, is $145,356.19.  Therefore, at this time, there are insufficient funds to satisfy the

ERVIN COHEN & JESSUP LLP

fees and costs of me and his retained professionals.  I propose to distribute the existing funds in my possession, as follows:

| PROFESSIONAL | FEES DUE | EXPENSES DUE | FEES TO BE PAID | EXPENSES TO BE PAID |
|---|---|---|---|---|
| Stephen J. Donell, Receiver | 70,810.49 | 1,366.29 | 32,954.98 | 1,366.29 |
| Ervin Cohen & Jessup LLP | 29,998.35 | 5,604.99 | 13,961.14 | 5,604.99 |
| Crowe Horwath LLP | 37,100.60 | 475.47 | 17,266.51 | 475.47 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of December, 2017, at Los Angeles, California.

_____
STEPHEN J. DONELL

ERVIN COHEN & JESSUP LLP

**ERVIN COHEN & JESSUP** LLP

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA              )
                                 )  ss:
COUNTY OF LOS ANGELES            )

     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) years and not a party to the within action.  My business address is 9401 Wilshire Boulevard, Beverly Hills, California 90212-2974.

     On December 22, 2017, I served the document described as **NOTICE OF MOTION AND MOTION OF STEPHEN J. DONELL, PERMANENT RECEIVER, TO APPROVE: RECEIVER'S FINAL ACCOUNT AND REPORT AND COMPENSATION; REQUEST FOR COMPENSATION OF THE RECEIVER'S COUNSEL AND ACCOUNTANT; DISCHARGE OF THE RECEIVER; ABANDONMENT OR DESTRUCTION OF BOOKS AND RECORDS; DISBURSEMENT OF REMAINING FUNDS; AND EXONERATION OF THE BOND; DECLARATION OF STEPHEN J. DONELL IN SUPPORT THEREOF** on counsel for the parties in this action, or on the parties in propria persona, addressed as stated on the attached service list:

[ ]    BY U.S. MAIL:  By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service.  I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service on that same day.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit:

[ ]    BY NEXT-DAY DELIVERY:  Via Overnite Express.  I am readily familiar with my employer's practice for the collection and processing of correspondence via Overnite Express.  In the ordinary course of business, this correspondence would be picked up by Overnite Express on that same day.

[X]    BY ELECTRONIC TRANSMITTAL:  I caused such document to be sent via email to the following e-mail addresses:

Peter Alan Davidson pdavidson@ecjlaw.com, lpekrul@ecjlaw.com
Mark M Hathaway mhathaway@werksmanlaw.com
David J Van Havermaat marcelom@sec.gov, larofiling@sec.gov, vanhavermaatd@sec.gov
Morgan B Ward Doran warddoranm@sec.gov
Byron Z Moldo echeung@ecjlaw.com, pdavidson@ecjlaw.com, bmoldo@ecjlaw.com, lpekrul@ecjlaw.com, steve.donell@jalmar.com

[X]    (FEDERAL)  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

EXECUTED on December 22, 2017, at Beverly Hills, California.

/s/Teresa M. Castelli
Teresa M. Castelli

IDOCS:13326.7:1026880.1