1   Byron Z. Moldo (SBN 109652)
       bmoldo@ecjlaw.com
2   ERVIN COHEN & JESSUP LLP
    9401 Wilshire Boulevard, Ninth Floor
3   Beverly Hills, California 90212-2974
    Tel:  (310) 273-6333
4   Fax:  (310) 859-2325

5   Attorneys for Stephen J. Donell, Permanent Receiver

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  SECURITIES AND EXCHANGE          )   CASE NO. CV 10-1689-JLS-AJW
    COMMISSION,                      )
12                                   )   **NOTICE OF MOTION AND**
             Plaintiff,              )   **MOTION OF STEPHEN J. DONELL,**
13                                   )   **PERMANENT RECEIVER, TO**
        v.                           )   **APPROVE: RECEIVER'S FINAL**
14                                   )   **ACCOUNT AND REPORT AND**
    FRANCOIS E. DURMAZ (aka          )   **COMPENSATION; REQUEST FOR**
15  MAHMUT E. DURMAZ), ROBERT C.     )   **COMPENSATION OF THE**
    PRIBILSKI, USA RETIREMENT        )   **RECEIVER'S COUNSEL AND**
16  MANAGEMENT SERVICES (aka USA     )   **ACCOUNTANT; DISCHARGE OF**
    FINANCIAL MANAGEMENT             )   **THE RECEIVER; ABANDONMENT**
17  SERVICES, INC.),                 )   **OR DESTRUCTION OF BOOKS**
                                     )   **AND RECORDS; DISBURSEMENT**
18           Defendants.             )   **OF REMAINING FUNDS; AND**
                                     )   **EXONERATION OF THE BOND;**
19      And                          )   **DECLARATION OF STEPHEN J.**
                                     )   **DONELL IN SUPPORT THEREOF**
20  SIBEL INCE, MEHMET KARAKUS,      )
    MARLALI GAYRIMENKUL              )   DATE:    July 27, 2018
21  YATIRIMLARI, MARLALI             )   TIME:    2:30 P.M.
    PROPERTY INVESTMENT              )   CTRM:    10A
22  COMPANY, LLC, GULEN              )
    ENTERPRISES, INC.,               )   Hon. Josephine L. Staton
23                                   )
             Relief Defendants.      )   [Pursuant to Local Rule 66-7]
24                                   )
                                     )   *[Special Notice of Motion to All Known*
25                                   )   *Potential Claimants Filed Concurrently*
                                     )   *Herewith]*
26  _____ )

27

28

ERVIN COHEN & JESSUP LLP

**TO THE HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE, ALL PARTIES HEREIN, AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 27, 2018 at 2:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 10A of the above-entitled Court located at 411 West Fourth Street, Santa Ana, California, 92701, Stephen J. Donell, Permanent Receiver ("Receiver") for defendant USA Retirement Management Services (aka USA Financial Management Services, Inc.) ("USA") and all entities controlled by defendants Francois E. Durmaz ("Durmaz") and Robert C. Pribilski ("Pribilski"), including Marlali Property Investment Company, LLC ("Marlali"), and their subsidiaries and affiliates (collectively "Receivership Entities"), will and hereby does move the Court for an order:

1.      Approving, settling and allowing the Receiver's Final Account and Report herein.

2.      Terminating the Receivership and discharging the Receiver from all further duties, liabilities and responsibilities.

3.      Allowing, settling and approving the Receiver's total fees in the sum of $402,523.13 and costs in the sum of $17,234.81 through the termination of the Receivership.

4.      Allowing, settling and approving the total fees and costs of the Receiver's counsel, Ervin Cohen & Jessup LLP ("ECJ"), through the termination of the Receivership herein in the sum of $167,748.17

5.      Allowing, settling and approving the total fees and costs of the Receiver's special counsel (retention approved pursuant to Court order under seal), through the termination of the Receivership herein in the sum of $14,665.00.

6.      Allowing, settling and approving the total fees and costs of the Receiver's accountants, Crowe Horwath LLP ("Crowe"), through the termination of the Receivership herein in the amount of $182,184.48.

7.      Authorizing the Receiver to distribute the remaining funds in the Receivership Estate, to the Receiver, ECJ, special counsel, and Crowe, *pro rata,* in partial satisfaction of their approved administrative fee claims.

8.      In the event that funds become available, and the Receiver and his retained professionals have been paid in full, authorizing the Receiver to distribute any funds to priority claimants 2121 Avenue of the Stars, LLC, and former employees of the Receivership Entities.

9.      In the event that any payments by the Receiver to Court-approved professionals or claimants are not negotiated within ninety (90) days, authorizing the Receiver to distribute the funds that were not negotiated to the remaining claimants on a pro rata basis;

10.      Ratifying, confirming and approving all of the Receiver's acts, transactions and all of his actions, including the actions of his attorneys, accountants, employees and agents, as Receiver herein for the duration of the Receivership as being right and proper and in the best interests of the Receivership Estate and the parties to this action.

11.      Ratifying, confirming and approving all distributions for compensation and costs to the Receiver made during the Receivership.

12.      Ratifying, confirming and approving all distributions for compensation and costs to ECJ made during the Receivership.

13.      Ratifying, confirming and approving all distributions for compensation and costs to the Receiver's special counsel made during the Receivership.

14.      Ratifying, confirming and approving all distributions for compensation and costs to Crowe made during the Receivership.

15.      Releasing the Receiver and the Receivership Estate from all liability for any and all claims, demands or causes of action that may have directly or indirectly arisen from the Receivership Estate prior to, during or after the Receivership period, that were not brought before this Court before the time of hearing on the Final

1  Account and Report.

2      16.    Authorizing the Receiver to abandon or destroy all books and records

3  of the Receivership Estate under his control.

4      17.    Exonerating and thereby releasing from any liability whatsoever any

5  bond heretofore filed by the Receiver and exonerating the sureties thereon.

6      The Receiver's Motion is brought pursuant to Local Rule 66-7 and is based

7  on this Notice of Motion; the Notice of Motion to Claimants, filed concurrently

8  herewith and attached hereto as **Exhibit "A"**; the supporting declaration of Stephen

9  J. Donell; the Receiver's Final Accounting; the records on file in this action; and

10  such other oral and documentary evidence as may be presented at or before the time

11  of hearing.

12

13  DATED:  June 14, 2018        ERVIN COHEN & JESSUP LLP

14

15

16                  By:  /s/ BYRON Z. MOLDO
                      BYRON Z. MOLDO

17                        Attorneys for Stephen J. Donell,
                      Permanent Receiver

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

On March 9, 2010 this Court appointed Stephen J. Donell ("Receiver"), as Temporary Receiver for defendant USA Retirement Management Services (aka USA Financial Management Services, Inc.) ("USA") and all entities controlled by defendants  Francois E. Durmaz ("Durmaz") and Robert C. Pribilski ("Pribilski"), including Marlali Property Investment Company, LLC ("Marlali"), and their subsidiaries and affiliates (collectively "Receivership Entities"). [Docket Entry 10] On March 24, 2010 this Court entered its order ("Appointing Order") which confirmed the Receiver's appointment as Permanent Receiver. [Docket Entry 25]. A true and complete copy of the Appointing Order is attached hereto as **Exhibit "B"**

The Receiver was appointed upon the motion of the Securities and Exchange Commission ("SEC"), which filed a complaint against the defendants alleging various violations of the Securities Act of 1933 and Securities and Exchange Act of 1934.  The defendants were accused of luring prospective individuals into a scheme to defraud individuals through various estate planning investment vehicles.  The defendants were in fact operating a scheme that misappropriated approximately $22 million through the Receivership Entities.  Funds were transferred by and between the Receivership Entities, owned and controlled entities, and the individuals defendants domestically and internationally.  Therefore, the Receiver was tasked with liquidating the remaining assets of the Receivership Entities and attempting to recover funds for the benefit of the defrauded individuals.

The Appointing Order provided, among other things, that the Receiver had the full powers of an equity receiver for the Receivership Entities and for all funds, assets, premises, collateral, and other assets belonging to or in the possession or control of the Receivership Entities or any of them.  [Docket Entry 25, Pg. 7, Sec VIII]  Pursuant to the Appointing Order, this Court directed the Receiver to make

ERVIN COHEN & JESSUP LLP

1  such payments and disbursements from the funds and assets taken into custody,

2  control and possession or thereafter received by him, and to incur, or authorize the

3  making of such agreements as may be necessary and advisable in discharging his

4  duties as Permanent Receiver.  [Docket Entry 25, Pg. 9, Sec VIII(F)].  As the

5  Receiver believes that he has concluded his duties, he prepared a final account

6  summary, attached hereto as **Exhibit "C"**

7  During the course of the Receivership, the Receiver engaged various

8  professionals, including the law firm of Ervin Cohen & Jessup LLP ("ECJ") as

9  general counsel; special counsel (retention approved pursuant to Court order under

10  seal); and the accounting firm of Crowe Horwath LLP ("Crowe") as forensic and tax

11  accountant.  The Receiver investigated the defendants and Receivership Entities by

12  engaging in detailed document review and forensic accounting.  A claims procedure

13  proposed by the Receiver was established by the Court to allow potential claimants

14  to make claims against the funds in the Receivership Estate.  Once the Receiver

15  established an inventory of the assets of the Receivership Estate, he began

16  liquidating assets and recovering funds for distribution to investors.  Throughout the

17  course of the Receivership, the Receiver worked closely with the SEC and regularly

18  provided status updates to this Court.  Furthermore, the Receiver periodically sought

19  further instructions and approval from this Court when necessary in the

20  administration of the Receivership Estate.

21  The Receiver previously filed two (2) interim fee applications that were

22  approved by the Court.  In order to aid the Court to disclose the fees and costs

23  incurred by the Receiver, ECJ, and Crowe, as well as the amounts proposed to be

24  paid, the Received prepared the following summary:

| Receiver | |
|---|---|
| Total fees incurred | $402,523.13 |
| Total expenses incurred | $17,234.81 |

ERVIN COHEN & JESSUP LLP

| | |
|---|---:|
| Total fees approved | $331,712.64 |
| Total expenses approved | $15,868.52 |
| Fees Paid to Date | $331,712.64 |
| Expenses Paid to Date | $15,868.52 |
| Fees and Expenses Paid to Date | $347,581.16 |
| Outstanding Fees | $70,810.49 |
| Outstanding Expenses | $1,366.29 |
| Proposed payment of outstanding fees | $32,954.98 |
| Proposed payment of outstanding expenses | $1,366.29 |
| | |
| **Legal – ECJ** | |
| Total fees and expenses incurred | $167,748.17 |
| Total fees and expenses approved | $132,144.83 |
| Fees and Expenses Paid to Date | $132,144.83 |
| Outstanding Fees Total | $29,998.35 |
| Outstanding Expenses Total | $5,604.99 |
| Proposed payment of outstanding fees | $13,961.14 |
| Proposed payment of outstanding expenses | $5,604.99 |
| | |
| **Accounting – Crowe** | |
| Total fees and expenses incurred | $182,184.48 |
| Total fees and expenses approved | $144,608.41 |
| Fees and Expenses Paid to Date | $144,608.41 |
| Outstanding Fees Total | $37,100.60 |
| Outstanding Expenses Total | $475.47 |
| Proposed payment of outstanding fees | $17,266.51 |
| Proposed payment of outstanding expenses | $475.47 |

ERVIN COHEN & JESSUP LLP

On April 4, 2012, this Court entered a final judgment in this case against all Defendants and the case closed. [Docket Entry 105] Now that the Receiver has obtained federal and state tax clearance, the Receiver believes he has completed all of his duties assigned under the Appointing Order and the Receivership should therefore be terminated, and the Receiver discharged.

## II.

## INVESTIGATION AND INVENTORY

The Receiver initially obtained documents and information regarding the defendants and Receivership Entities from the SEC. Due to the large amount of misappropriated funds and sophistication of the scheme operated by the defendants, it was immediately apparent that the Receiver would require the services of additional professionals in order to complete his investigation and administration of the Receivership Estate. Among the professionals retained, the Receiver employed counsel, an accounting firm, and a document recovery and imaging company in order to analyze the books and records of the Defendants and Receivership Entities acquired during the investigation.

The Receivership Entities maintained offices in Oakbrook Terrace, Illinois; Los Angeles, California; and Irvine, California. The Receiver personally visited each office and informed the employees at each office that he was assuming control of the entity, assets, and premises pursuant to the Appointing Order. Employees at the offices were interviewed by the Receiver and served with a copy of the Appointing Order. Some of the employees further assisted the Receiver by providing information about the Receivership Entities, including relinquishing books and records to the Receiver. In addition to the physical books and records, the Receiver also seized all of the computer hard drives of the Receivership Entities for forensic analysis.

1    Once the Receiver recovered the books and records of the Receivership
2  Entities, Crowe performed a detailed forensic accounting in order to allocate the
3  assets and funds of the Receivership Entities and establish the relationship between
4  the Receivership Entities, the defendants, financial institutions and third parties.
5  Ultimately, the Receiver determined that substantial funds were transferred through
6  various individuals and entities, including some located in the country of Turkey.
7  The Receiver also identified additional third parties who possessed documents and
8  records of relevance to the Receiver.  Upon identifying these third parties, the
9  Receiver focused his investigation on those third parties to determine their
10 implication, if any, in the Defendants' scheme.  The Receiver also analyzed the
11 books and records to comprise a list of potential claimants of the Receivership
12 Estate as defined by Local Rule 66-5.

13   Following his initial investigation, on March 22, 2010, the Receiver filed his
14 first interim report with this court that detailed such efforts.  A true and complete
15 copy of the Receiver's First Interim Report is attached hereto as **Exhibit "D"**
16 [Docket Entry 22].  The Receiver was also ordered to file a status report with the
17 Court by July 6, 2010.  [Docket Entry 24]  On June 28, 2010, the Receiver filed his
18 status report with the Court, attached hereto as **Exhibit "E"**.

19   As the Receiver uncovered assets and funds, he compiled a detailed inventory
20 of the same.  Once a substantially complete inventory was compiled, the Receiver
21 proceeded to evaluate the available actions required to liquidate the assets and
22 recover funds for the benefit of the Receivership Estate.  The Receiver obtained
23 Court-approved authority on numerous occasions for the purposes of liquidation and
24 distribution of the assets and funds.

25
26
27
28

## III.

## <u>RETENTION OF PROFESSIONALS</u>

Due to the complexity of the misappropriation scheme and the transfer of funds across international borders, the Receiver was required to retain various professionals to assist him in discharging his duties. As the Receiver's investigation uncovered the breadth of legal issues; investment vehicles; and funds involved in this case, he retained professionals as necessary. In each instance where professionals were retained, the Receiver applied to the Court for confirmation of said retentions. In all such applications, this Court approved the Receiver's retention of an accounting firm, general counsel and special counsel.

Due to the advanced legal issues involved in this case, it was clear from the time of his appointment that the Receiver would require general legal counsel to represent him and the interests of the Receivership Estate in this matter. The multi-jurisdictional nature of the Defendants' scheme would require legal counsel with experience in such types of receivership matters. Moreover, the Defendants in this action had retained counsel and maintained a position adverse to the Receiver. Such noncooperation from the Defendants resulted in further litigation requiring the Receiver to retain his own counsel. The Receiver retained ECJ as his general counsel to represent him in this action and any collateral actions that arose during the course of the Receivership. ECJ incurred a total sum of $167,748.17 in fees and costs during the course of the Receivership, as reflected in the Receiver's Final Accounting, which includes estimate fees to finalize and file this report. (Ex. C)

The Receiver's initial inspection of the books and records of the Receivership Entities indicated that a complex accounting was required in order to allocate funds of the Receivership Estate. Such an undertaking warranted the retention of an accounting firm with experience in large-scale fraud schemes as occurred in this case. The Receiver retained the national accounting firm of Crowe to carry out efforts to locate misappropriated funds and assets. Once Crowe located funds and

ERVIN COHEN & JESSUP LLP

1   assets, the Receiver could begin to repatriate funds into the Receivership Estate.

2   Crowe also assumed the duty of maintaining the books and records to administer the

3   Receivership Estate and advised the Receiver in any tax matters that arose.  During

4   the course of the Receivership, Crowe incurred a total sum of $182,184.48 in fees

5   and costs, as reflected in the Receiver's Final Accounting.  (Ex. C)

6        On April 15, 2010, the Receiver filed a motion to ratify the Receiver's

7   employment of attorneys and accountants. [Docket Entry 26]  On May 6, 2010, this

8   Court confirmed and ratified the Receiver's retention of ECJ and Crowe to serve as

9   his general counsel and accounting firm, respectively.  [Docket Entry 33]

10        During the Receiver's investigation, certain confidential issues arose, which

11   required the Receiver to retain special counsel.  The nature of the matters warranted

12   the filing of several sealed documents with this Court.  On April 7, 2011, the

13   Receiver filed an *ex parte* application to seal certain documents filed with this

14   Court.  [Docket Entry 74]  On the same day this Court approved the Receiver's *ex*

15   *parte* application and ordered certain documents to remain under seal.  [Docket

16   Entry. 76]  Without disclosing any details therein beyond the publically available

17   docket, the Receiver applied for an order authorizing the employment of special

18   counsel on April 7, 2011.  [Docket Entry 77]  On the same day, this Court approved

19   the Receiver's retention of said special counsel.  [Docket Entry 78]  Special counsel

20   incurred a total sum of $14,665.00 in fees and costs during the course of the

21   Receivership, as reflected in the Receiver's Final Accounting.  (Ex. C)

22

23   **IV.**

24   **LIQUIDATION OF ASSETS AND CLAIMS PROCEDURE**

25        Based on his inventory, the Receiver identified assets subject to liquidation

26   and located funds at various financial institutions.  Pursuant to the Appointing

27   Order, the Receiver was able to freeze numerous bank accounts that contained funds

28   of the Receivership Entities.  Additionally, the Receiver was able to obtain refunds

11

ERVIN COHEN & JESSUP LLP

1    from many legitimate entities that transacted business with the Defendants and

2    Receivership Entities.  Upon identifying assets subject to liquidation, the Receiver

3    proceeded to seek the permission of this Court to take further action which was

4    granted by this Court.

5         On April 15, 2010, the Receiver filed a motion to (1) Discontinue Business

6    Operation; (2) Vacate Premises In Century City, and Irvine, California and

7    Oakbrook Terrace, Illinois and Reject Leases; (3) Employ Auctioneer to Sell

8    Personal Property; (4) Return Client Files; (5) Authorize Receiver to Sell Ford E150

9    Cargo Van; (6) Ratify Employment of Attorneys and Accountants; (7) Approve the

10   Employment of A Property Manager; and (8) Approve Listing Agreement for Real

11   Property.  [Docket Entry 26].  The Court entered an order granting the Receiver's

12   aforementioned motion on May 6, 2010 [Docket Entry 33].  Following entry of the

13   Court's Order, the Receiver began to wind up the Receivership Entities and

14   liquidate the personal and real property thereof.

15        As indicated above, on June 28, 2010, the Receiver filed his First Status

16   Report, which provided details regarding the Receiver's liquidation efforts. (Ex. E)

17   The Receiver discovered that a substantial amount of the misappropriated funds

18   were transferred into the country of Turkey prior to his appointment.  The Receiver

19   retained special counsel in an attempt to investigate and recover the transferred

20   funds.  Unfortunately, despite the Receiver's best efforts, the funds could not be

21   recovered from Turkey, and are believed to be unrecoverable by the Receiver.

22        In total, the Receiver recovered $940,712.48 from several sources. (Ex. C)

23   As the Receiver marshaled funds into the Receivership Estate, he established a

24   claims procedure for creditors and investors to make claims against the funds of the

25   Receivership Estate.  On July 23, 2012, the Receiver filed a Motion to Establish a

26   Claims Procedure and Bar Date.  [Docket Entry 40]  On September 28, 2010, the

27   Court granted the Receiver's Motion to Establish a Claims Procedure and Bar Date.

28   [Docket Entry 49]  A true and complete copy of the Order granting the Receiver's

ERVIN COHEN & JESSUP LLP

1   Motion to Establish a Claims Procedure and Bar Date for Filing Claims is attached

2   hereto as **Exhibit "F"**  Pursuant to the Court's order, the Receiver caused notice of

3   the claims procedure to be published in the Los Angeles Daily Journal and Chicago

4   Sun-Times for two consecutive weeks.  Furthermore, the Receiver posted

5   information regarding the claims procedure on his website and made claim forms

6   available for download.  The Court set a claims bar date ninety (90) days after the

7   entry of its order and established procedures for objecting to claims and resolving

8   claims disputes.

9        In accordance with the claims procedure, the Receiver compiled a database of

10  claimants and determined whether to accept or reject individual claims.  The

11  Receiver evaluated each claim based on its documentary support; information

12  obtained from the books and records seized at the Receivership Entities; and

13  information derived from the Receiver's own investigation.  Court intervention was

14  not required on any claims issues.

15

16                                              V.

17                          **DISTRIBUTION OF FUNDS**

18        The majority of recovered funds have been consumed by the administration of

19  the Receivership Estate, including the numerous professionals required in order to

20  engage in said administration.  In addition to administrative expenses, there are also

21  several claims that are entitled to receive priority distribution over the claims of

22  defrauded individuals, as discussed in detail below.  Due to the fact that substantial

23  funds were transferred to Turkey and could not be recovered, there are no funds

24  remaining for distribution to creditors and claimants after payment of administrative

25  and priority claims.

26        As discussed above, the majority of recovered proceeds have been consumed

27  by the administrative fees and costs of the Receivership Estate.  The Receiver

28  incurred $402,523.13 in fees and $17,234.81 in costs.  ECJ, the Receiver's general

13326.7:9256079.1

13

1 counsel incurred $167,748.17 in fees and costs; the Receiver's special counsel

2 incurred $14,665.00 fees and costs; and Crowe, the Receiver's accounting firm

3 incurred $182,184.48 in fees and costs.

4     The general rule regarding payment of receivership expenses is that the:

5     "[C]osts and expenses of a receivership, including compensation for the

6 receiver, counsel fees, and obligations incurred by him in the discharge of his duties,

7 constitute a first charge against the property or funds in the receivership. . ."

8 66 Am.Jur.2d *Receivers* § 281 (1973). "The Order of payment of receivership costs

9 and expenses may be stated as follows: -- First:  Payment of what is ordinarily

10 called court costs and payment of receiver's fees and receiver's counsel fees—the

11 above mentioned costs and fees are a first charge on the funds or property in the

12 court's possession and control. . ."  Ralph Ewing Clark, *Clark on Receivers*, § 637

13 (3d ed. rev 1992).  The Receiver and his retained professionals should therefore

14 receive the highest priority of distribution from the funds of the Receivership Estate.

15 This aforementioned first priority of payment is also supported by applying the

16 bankruptcy principles provided by Local Rule 66-8, as discussed below.

17     In this case, in addition to the Receiver and his retained professionals, there

18 exist several claims entitled to priority including thirteen employee wage claims and

19 an additional administrative claim as follows:

20     •    An administrative claim by 2121 Avenue of the Stars, LLC ("2121

21     Avenue") in the amount of $29,243.46 is entitled to priority by

22     stipulation and order of this Court entered on November 9, 2010.

23     (Stipulation at [Docket Entry 55]; Order at [Docket Entry 58])  A true

24     and complete copy of the Order Approving Stipulation Permitting 2121

25     Avenue of the Stars, LLC to Apply Security Deposits is attached hereto

26     as **Exhibit "G"**

27

28

ERVIN COHEN & JESSUP LLP

1    • Combined wage claims totaling $22,486.52 of thirteen former
2    employees of the Receivership Entities are entitled to priority pursuant
3    to Local Rule 66-8, as discussed below.

4    Since the claim and priority of 2121 Avenue has already been resolved by
5    stipulation and order of this Court, no further legal analysis is warranted.  The
6    Receiver believes the wage claims, on the other hand, are entitled to priority in
7    distribution pursuant to Local Rule 66-8 and United States Bankruptcy Code
8    ("Bankruptcy Code") 11 U.S.C. § 507(a)(4)(A).

9    Local Rule 66-8 provides:  "Except as otherwise ordered by the Court, a
10   receiver shall administer the estate as nearly as possible in accordance with the
11   practice in the administration of estates in bankruptcy."  The wage claims should
12   therefore receive treatment as if the Receivership Estate is analogous to a
13   bankruptcy estate and the Receiver as the bankruptcy trustee, applying principles of
14   bankruptcy law.  The Bankruptcy Code enumerates priorities in distribution at 11
15   U.S.C. § 507.  As applicable in this case, the first priority in distribution is to the
16   administrative expenses of the Receiver [trustee] (11 U.S.C. § 507(a)(1)(C)), which
17   includes the fees and costs of his retained professionals.  The Bankruptcy Code next
18   provides second priority, as applicable in this case to "wages, salaries, or
19   commissions, including vacation, severance, and sick leave pay earned by an
20   individual[.]"  11 U.S.C. § 507(a)(4)(A).

21   Thus, the fees and expenses of the Receiver and his professionals should
22   receive first priority in distribution.  Following satisfaction of the fees and expenses
23   of the Receiver and his professionals, and in the event that funds become available,
24   the Receiver proposes to distribute the available funds on a *pro rata* basis to pay the
25   priority claims of (i) 2121 Avenue; and (ii) wages.

26   As of December 18, 2017, a balance of $71,629.38 exists in the receivership
27   estate.  The total amount owed to the Receiver, ECJ, special counsel, and Crowe, is
28   $145,356.19 consisting of $137,909.44 in fees and $7,446.75 in expenses.

ERVIN COHEN & JESSUP LLP

MOTION OF STEPHEN J. DONELL, PERMANENT RECEIVER FOR ORDER APPROVING FINAL ACCOUNT AND DISCHARGE

1  Therefore, at this time, there are insufficient funds to satisfy the fees and costs of the

2  Receiver and his retained professionals.  The Receiver proposes to distribute the

3  existing funds in his possession, as follows:

| PROFESSIONAL | FEES DUE | EXPENSES DUE | FEES TO BE PAID | EXPENSES TO BE PAID |
|---|---|---|---|---|
| Stephen J. Donell, Receiver | 70,810.49 | 1,366.29 | 32,954.98 | 1,366.29 |
| Ervin Cohen & Jessup LLP | 29,998.35 | 5,604.99 | 13,961.14 | 5,604.99 |
| Crowe Horwath LLP | 37,100.60 | 475.47 | 17,266.51 | 475.47 |

## VI.

## AUTHORITY TO DISCHARGE RECEIVER

A Receiver may be discharged upon his motion for approval of his final

account and report after proper notice to all known claimants of the Receivership

Estate.  Local Rule 66-7 provides:

> The receiver shall give notice by mail to all parties to the action and to
> all known creditors of the defendant of the time and place for hearing
> of:
> (a)  Petitions for the payment of dividends to creditors;
> (b)  Petitions for the confirmation of sales of real property and
>      personal property;
> (c)  Report of the receiver;
> (d)  Applications for instructions concerning administration of the
>      estate;
> (e)  Applications for discharge of the receiver; and
> (f)  Applications for fees and expenses of the receiver, the attorney
>      for the receiver and any other person to aid the receiver.
> The provisions of L.R. 6-1 shall apply to such notice.

Local Rule 6-1 provides that if mailed, the notice of motion shall be served

not later than thirty-one (31) days before the date of the motion.  In this case, the

Receiver is providing his account and report, applying for discharge and payment of

fees and expenses.  The Receiver, by and through counsel, mailed the notice of

motion to all known claimants of the Receivership Estate on December 22, 2017 and

the hearing is set for February 9, 2018, which is in compliance with Local Rule 6-1.

A true and complete copy of the Receiver's Notice of Motion to Claimants is

attached hereto as **Exhibit "A"**  The Receiver has complied with the local rules in the presentation of this motion and the Court is authorized to grant the Receiver's requested relief.

## VII.

## <u>CONCLUSION</u>

The Receiver should be discharged because he has fulfilled his duties under the Appointing Order and final judgment has been entered in this case.  For the aforementioned reasons, the Receiver requests that the Court approve the Receiver's final account and report and the additional relief requested herein.


DATED:  June 14, 2018          ERVIN COHEN & JESSUP LLP



                              By: /s/ BYRON Z. MOLDO
                                   BYRON Z. MOLDO
                                   Attorneys for Stephen J. Donell,
                                   Permanent Receiver

## DECLARATION OF STEPHEN J. DONELL

I, Stephen J. Donell, declare:

1. On March 9, 2010, I was appointed as Temporary Receiver for defendant USA Retirement Management Services (aka USA Financial Management Services, Inc.) ("USA") and all entities controlled by defendants Francois E. Durmaz ("Durmaz") and Robert C. Pribilski ("Pribilski"), including Marlali Property Investment Company, LLC ("Marlali"), and their subsidiaries and affiliates (collectively "Receivership Entities").

2. On March 24, 2010 this Court entered its order ("Appointing Order") which confirmed my appointment as Permanent Receiver.

3. I was appointed Receiver upon the motion of the Securities and Exchange Commission ("SEC"), which filed a complaint against the defendants alleging various violations of the Securities Act of 1933 and Securities and Exchange Act of 1934. The defendants were accused of luring prospective individuals into a scheme to defraud individuals through various estate planning investment vehicles. The defendants were, in fact, operating a scheme that misappropriated approximately $22 million through the Receivership Entities. Funds were transferred by and between the Receivership Entities, owned and controlled entities, and the individuals defendants domestically and internationally. As Receiver I was tasked with liquidating the remaining assets of the Receivership Entities and attempting to recover funds for the benefit of the defrauded individuals.

4. The Appointing Order provided, among other things, that the Receiver had the full powers of an equity receiver for the Receivership Entities and for all funds, assets, premises, collateral, and other assets belonging to or in the possession or control of the Receivership Entities or any of them. Pursuant to the Appointing Order, this Court directed me to make such payments and disbursements from the funds and assets taken into custody, control and possession or thereafter received by me, and to incur, or authorize the making of such agreements as may be necessary

1  and advisable in discharging my duties as Permanent Receiver.  As I believe that I

2  have concluded my duties, I prepared this final account and report.

3       5.    During the course of the Receivership, I engaged various professionals,

4  including the law firm of Ervin Cohen & Jessup LLP ("ECJ") as general counsel;

5  special counsel (retention approved pursuant to Court order under seal); the

6  accounting firm of Crowe Horwath LLP ("Crowe") as principal forensic and tax

7  accountant.

8       6.    I investigated the defendants and Receivership Entities by engaging in

9  detailed document review and forensic accounting.  This Court approved the

10  establishment of a claims procedure that I proposed to allow potential claimants to

11  make claims against the funds in the Receivership Estate.  Once I established an

12  inventory of the assets of the Receivership Estate, I began to liquidate assets and

13  attempt to recover funds for distribution to investors.  Throughout the course of the

14  Receivership, I worked closely with the SEC and regularly provided status updates

15  to this Court.  Furthermore, I have periodically sought further instructions and

16  approval from this Court when necessary during the administration of the

17  Receivership Estate.

18       7.    I previously commenced the process to terminate the Receivership

19  Estate by submitting final tax returns for the receivership estate.  I also requested a

20  prompt determination of tax liability pursuant to Internal Revenue Code ("IRC")

21  Section 6501(d) which provides, in part, that any proceeding for the collection of tax

22  shall be begun within eighteen (18) months after written request, which is less than

23  the standard three (3) year period.

24       8.    I have received letters from the Internal Revenue Service and

25  California Franchise Tax Board confirming that as Receiver I have no further

26  liability to either agency.  Therefore, I believe it is appropriate for the receivership

27  estate to be terminated, the Receiver discharged, and to distribute the remaining

28  funds in my possession.

ERVIN COHEN & JESSUP LLP

**9.**     The majority of funds that I recovered have been consumed by the administration of the Receivership Estate, including the numerous professionals required in order to engage in said administration.  In addition to administrative expenses, I believe there are also several claims that are entitled to receive priority distribution over the claims of defrauded individuals.  Due to the fact that substantial funds were transferred to Turkey and could not be recovered, there are insufficient funds at this time to fully satisfy the outstanding amounts owed to me, ECJ, special counsel, and Crowe.

**10.**     I incurred $402,523.13 in fees and $17,234.81 in costs.  ECJ, my general counsel incurred $167,748.17 in fees and costs; my special counsel incurred $14,665.00 in fees and costs; and Crowe, my accounting firm incurred $182,184.48 in fees and costs.

**11.**     In addition to the amounts owed to me and my retained professionals, there exist several claims entitled to priority including thirteen employee wage claims and an additional administrative claim as follows:

- An administrative claim by 2121 Avenue of the Stars, LLC ("2121 Avenue") in the amount of $29,243.46 that was approved by this Court pursuant to its order entered on November 9, 2010.

- Combined wage claims totaling $22,486.52 of thirteen former employees of the Receivership Entities.

**12.**     I am proposing that the outstanding amounts owed to me and my professionals should receive first priority in distribution.  Following satisfaction of the fees and expenses of me and my professionals, and in the event that funds become available, I propose to distribute the available funds on a *pro rata* basis to pay the priority claims of (i) 2121 Avenue; and (ii) wages.

**13.**     As of December 18, 2017, a balance of $71,729.38 exists in the receivership estate.  The total amount owed to me, ECJ, special counsel, and Crowe, is $145,356.19.  Therefore, at this time, there are insufficient funds to satisfy the

fees and costs of me and his retained professionals.  I propose to distribute the existing funds in my possession, as follows:

| PROFESSIONAL | FEES DUE | EXPENSES DUE | FEES TO BE PAID | EXPENSES TO BE PAID |
|---|---|---|---|---|
| Stephen J. Donell, Receiver | 70,810.49 | 1,366.29 | 32,954.98 | 1,366.29 |
| Ervin Cohen & Jessup LLP | 29,998.35 | 5,604.99 | 13,961.14 | 5,604.99 |
| Crowe Horwath LLP | 37,100.60 | 475.47 | 17,266.51 | 475.47 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of June, 2018, at Los Angeles, California.

_____
STEPHEN J. DONELL

**CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) years and not a party to the within action.  My business address is 9401 Wilshire Boulevard, Beverly Hills, California 90212-2974.

     On **June 20, 2018**, I served the document described as: **NOTICE OF MOTION AND MOTION OF STEPHEN J. DONELL, PERMANENT RECEIVER, TO APPROVE: RECEIVER'S FINAL ACCOUNT AND REPORT AND COMPENSATION; REQUEST FOR COMPENSATION OF THE RECEIVER'S COUNSEL AND ACCOUNTANT; DISCHARGE OF THE RECEIVER; ABANDONMENT OR DESTRUCTION OF BOOKS AND RECORDS; DISBURSEMENT OF REMAINING FUNDS; AND EXONERATION OF THE BOND; DECLARATION OF STEPHEN J. DONELL IN SUPPORT THEREOF** on counsel for the parties in this action, or on the parties in propria persona, addressed as stated on the attached service list:

[ ]    BY U.S. MAIL:  By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service.  I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service on that same day.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit:

[X]    BY ELECTRONIC TRANSMITTAL:  I caused such document to be sent via email to the following e-mail addresses:

Peter Alan Davidson pdavidson@ecjlaw.com, lpekrul@ecjlaw.com
Mark M Hathaway mhathaway@werksmanlaw.com
David J Van Havermaat marcelom@sec.gov, larofiling@sec.gov, vanhavermaatd@sec.gov
Morgan B Ward Doran warddoranm@sec.gov
Byron Z Moldo echeung@ecjlaw.com, pdavidson@ecjlaw.com, bmoldo@ecjlaw.com, lpekrul@ecjlaw.com, steve.donell@jalmar.com

[X]    (FEDERAL)  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

EXECUTED on **June 20, 2018**, at Beverly Hills, California.

/s/ Lore Pekrul
Lore Pekrul

ERVIN COHEN & JESSUP LLP

IDOCS:13326.7:1026880.1